## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**YOLANDA HERNANDEZ LLANES, et al.,**

        **Plaintiffs,**

        **vs.**

**JORGE GONZALEZ OTERO, et al.,**
        **Defendants.**

**CIVIL NO. 97-2618 (DRD)**

RECEIVED AND FILED
2000 MAY -4 PM 3:58
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN. P.R.

## ORDER

Pending before the Court is Co-defendant's, Germán R. Román-Vélez in his personal capacity ("Román"), motion for summary judgment (Docket No. 63), filed on November 8, 1999. Plaintiffs opposed. (Docket No. 64).

The Court pauses briefly to address a collateral issue; submittal of English translations of documents not in the English language. See Local Rule 108.1. Román has complied with Local Rule 108.1 and submitted English language translations as attachments to its motion for summary judgment. (Docket No. 63, Exhibit 3). Plaintiffs, on the other hand, requested leave to file attachments in the Spanish language pending certified translation. (Docket No. 65). However, Plaintiffs did not give a date certain for the expiration of the requested extension, see Local Rule 311.14, nor have they subsequently submitted the translations. The Court shall adjudicate Román's motion and the Plaintiffs' opposition without the benefit of Plaintiffs' English translations, notwithstanding, the Plaintiffs are hereby **ORDERED** to submit to the Court within ten (10) days of this Order all certified English translations for the exhibits to their respective filings. Failure to comply with this Order shall result in the striking of the parties' motions and the Court may reconsider this Order accordingly.

AO 72A
(Rev.8/82)

Furthermore, all parties with pending motions with attachments not in the English language and not accompanied by a certified English translations are also **ORDERED** within ten (10) days of this Order to submit the corresponding English translations.  Henceforth, all motions shall strictly comply with Local Rule 108.1.  The parties are hereby FOREWARNED that failure to comply with this Order will result in the pending or newly filed motions to be summarily stricken.

## I. BACKGROUND

Román is the Executive Director of the North Central Consortium - Arecibo ("NCCA" or "the Consortium"), an organization of eight municipalities[1] in the north central region of Puerto Rico.  Plaintiffs are Yolanda Hernández-Llanés ("Hernández"), Luis H. Beauchamp-Hernández ("Beauchamp"), Juan R. Negrón-Rivera ("Negrón"), Misael Santiago-Vargas ("Santiago"), Patricia Avilés-Torres ("Avilés"), Cecilia Arroyo-Cordero ("Arroyo"), Mildred Salgado-Rosario ("Salgado"), and Ana D. Andújar-Rivera ("Andújar").  All Plaintiffs remain employees of the NCCA.  They claim that they have suffered political discrimination in violation of their rights under the First, Fifth, and Fourteenth Amendments of the Constitution.  They seek monetary and injunctive relief pursuant to 42 U.S.C. § 1983, but also allege 42 U.S.C. §§ 1981 & 2000(d).  Additionally, Plaintiffs invoke the Court's supplemental jurisdiction for their Puerto Rico law claims.  See 28 U.S.C. § 1367.

---

[1] The Consorcio Norte Central-Arecibo, NCCA's Spanish language equivalent is composed of eight (8) municipalities: Adjuntas, Arecibo, Camuy, Hatillo, Jayuya, Lares, Queradillas, and Utuado.

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

The NCCA is a consortium formed pursuant to Puerto Rico law composed of eight municipalities, including Jayuya. See P.R. Laws Ann. tit. 21, § 4051(p) (Supp. 1993-94). The Consortium's purpose is to establish training and employment programs for economically disadvantaged individuals in both the private and public sectors. The funding for the programs is provided through the federal Job Training Partnership Act. See 29 U.S.C.A. §§ 1501 - 1792b (West 1999). The Act's purpose coincides with that of the NCCA: to implement programs to help disadvantaged individuals to find jobs and receive employment training. See 29 U.S.C.A. § 1501.

The NCCA is made up of a Board of Mayors from the eight represented municipalities. The Board provides the norms and guidelines under which the consortium is administrated. The chairman of the Board appoints an executive director, Román whose responsibility is the daily administration and personnel management of the NCCA, including the hiring of personnel.

There is a local NCCA office in each of the member municipalities. Each office is run by a local coordinator. The local coordinator answers to the executive director and an operations specialist. The duties of the local coordinator include overseeing the functions of the local office, managing its activities, supervising its personnel, and promoting in the municipality the programs offered by the office. Hernández was the local coordinator of the Jayuya office until she was transferred to the central offices. (Docket No. 64, Exhibits 1 & 9). All other Plaintiffs,

Andújar , Arroyo, Avilés, Santiago, Negrón, Beauchamp, and Salgado [2] remain employed at the local Jayuya office of the NCCA. (Docket No. 64, Exhibits 2-7, 10-16). They were all employed under one-year contracts with the NCCA that are renewed annually. (Docket No. 64, Exhibits 17-24). All Plaintiffs are activists in the New Progressive Party ("NPP"). (Docket No. 64, Exhibits 1-7, 9-16).

In 1996, the mayor of Jayuya was also a member of the NPP. In the mayoral elections that year, Co-defendant, Jorge González-Otero ("González"), was the successful candidate. He is a member of the rival Puerto Rico political party, Popular Democratic Party ("PDP"). Plaintiffs allege that after González took office, in January 1997, they all became subjected to political discrimination.

Plaintiffs state that they requested Román's intervention as executive director of NCCA to protect Plaintiffs from the other defendants illegal actions, but Román failed to investigate or take corrective measures. In June 1997, Román told Plaintiffs at a meeting that they "better start looking for another job" and that hard times awaited them at the NCCA because González did not want them working at the local Jayuya.

Hernández was deprived of her functions relating to the office's summer program; these duties were assigned to PDP member Co-defendant, Francisco Torres ("Torres") appointed by Román. Because Torres and the "worksites" were doing her work, Hernández was without duties. Additionally, she began to have problems with Torres and the "worksites," the newly-

---

[2] Although Plaintiff, Mildred Salgado-Rosario, avers that she was forced to resign, she failed to proffer a sworn statement (Docket No. 64, Exhibit 8) and an examination of her answers to interrogatories (Docket No. 64, Exhibit 16) fails to support such contention.

Page -4-

hired participants in NCCA programs. They would not allow Hernández to perform her work. Effective September 1, 1997 Hernández was transferred to the NCCA's central office in Arecibo. Hernández avers that the transfer has been a heavy financial burden and moreover, she has been left without any functions to perform.

The other Plaintiffs also complain that their responsibilities were taken away from them after González took office and thus, Plaintiffs spend their days "idling and without any duties." Plaintiffs also complain that they were precluded from applying for the Technician III position.

There is evidence that the issue of political patronage did not go unnoticed by the powers that run the NCCA. Co-defendant, Angel Román Vélez, ("Angel Román") the mayor of Arecibo, testified that after the 1996 elections, the NCCA board agreed that each mayor would name the local coordinator in his or her local office. (Docket No. 64, Exhibit 26, p. 12). In order [1] to allow the newly-elected mayors to fill the local coordinator position, the incumbents were given an unsolicited transfer to the central offices and a raise in salary. Each mayor would then be free to name his or her candidate to the now vacant position in the local office. Some of the newly-elected mayors also had lists of people that they wanted to hire to and fire from their local Consortium office. Román wrote to the Mayors to inform them, including González, that notwithstanding the new mayors' desire to remove employees from the local NCCA offices, the mayors had not provided a justifiable reason for such actions, and that therefore the employees' contracts were obliged to be renewed. (Docket No. 63, Exhibits 1-2).

.

## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to

Page -5-

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED. R. CIV. P. 56(c). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997), and "'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). The court should "'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). "The court may consider any material that would be admissible or usable at trial." See 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed. 1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter ... .'" Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir. 1988) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (citations omitted). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." Lipsett

v. University of P.R., 864 F.2d at 895 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 242, 106 S.Ct. at 2505).

"We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.  Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962); cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll. v. P.B. Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp., 846 F.2d 103, 107 (1st Cir. 1988); Lipsett v. University of P.R., 864 F.2d at 895. "Under such circumstances [state of mind], jury judgments about credibility are typically thought to be of special importance." Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983); see Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and  unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

### III. DISCUSSION

Román's motion for summary judgment (Docket No. 63), pursuant to Local Rule 311.12, contains the following asserted uncontested material facts set forth verbatim:

1.  "Germán Román" obtained legal counseling regarding the applicable laws to the rights of the employees of the North Central Consortium of Arecibo in all matters concerned with termination and renewals of the employment contracts. (See Exhibit # 1, Sworn Statement of Germán R. Román Vélez from February 12th, 1999).

2.  "Germán Román" advised the Mayor of Jayuya that none of the employees of the North Central Consortium of Arecibo could be discriminated solely because of their political affiliation and/or beliefs. (See Exhibit 1).

3.  On June of 1997 "Germán Román" sent a letter to the Mayor of Jayuya advising him that the North Central Consortium of Arecibo employment contracts had to be renewed since there were not valid reasons to discontinue the renovation process of these contracts, and for that reason he was going to continue with the renewal of said contracts. See Exhibit 1.

4.  All plaintiffs were hired under the provisions of different employment contracts that stated that they were transitory employees. (See Exhibit 2, Sworn Statement of Germán R. Román Vélez from February 18, 1999). See also Exhibit 3[3] (Block of plaintiffs' employment contracts).

(Docket No. 63). Román argues that under these facts he is relieved of liability under § 1983 because: (1) his actions were not reckless and callous in clear disregard to Plaintiffs' rights, therefore, no deprivation of a constitutional dimension has occurred; (2) Plaintiffs' have failed to

---

[3] Certified English translations of employment contracts were provided for all Plaintiffs except Juan R. Negrón-Rivera. (Docket No. 63, Exhibit 3). Although the Spanish language version has been provided by Plaintiffs for Juan R. Negrón-Rivera (Docket No. 64, Exhibit 22), the certified translation is to be provided, as soon as possible, by Román.

establish a causal link between Román's actions and the alleged constitutional violation; and (3) intervening causes. Also, Román avers, that (4) Plaintiffs' do not have the requisite property interest in their continued employment and thus, their Due Process claim under § 1983 must fail. Lastly, Román believes he is shielded from liability by the (5) defense of qualified immunity because his actions were objectively reasonable.

## A. Due Process claim.

Plaintiffs claim that Román's conduct has violated their due process rights. Román avers, that Plaintiffs' do not have the requisite property interest in their continued employment and thus, their due process clause claim under § 1983 must fail. A plaintiff bringing a procedural due process claim must demonstrate that state action has deprived her of a constitutionally protected interest in life, liberty, or property without due process of law. See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996); Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991). Hence, Román is correct that where allegations of life or liberty deprivation are absent, as in the instant case, the *sine qua non* of a due process clause claim under § 1983 is that a state official causes a property loss under color of state law. See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986).

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vendicate those claims.
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem

> from an independent source such as state law--rules or understandings that secure
> certain benefits and that support claims of entitlement to those benefits. "

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701(1972). It follows,

that for Plaintiffs to have a due process claim, they must have a property interest in their

positions. See id. The question of whether a person has a constitutionally protected property

interest is answered by an independent, extra-constitutional source such as state law. See Correa-

Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990); see also Bishop v. Wood, 426

U.S. 341, 96 S.Ct. 2074 (1976) (A property interest in employment is a question of state law – by

ordinance, contract, etc.); Temple v. Inhabitants of the City of Belfast, 30 F.Supp.2d 60, 67 n.4

(D. Maine 1998) ("To demonstrate the existence of a property interest, a plaintiff must show 'a

legitimate claim of entitlement.'" Id. (quoting Board of Regents of State Colleges v. Roth, 408

U.S. 564, 577, 92 S.Ct. 2701(1972).). A government employee has a constitutionally protected

property interest in continued employment if he reasonably expects that his employment will

continue. See King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997) (citing Cummings v.

South Portland Hous. Auth., 985 F.2d 1, 2 (1st Cir. 1993)). "An employee who can only be

dismissed **for cause** has such an expectation." Id. (emphasis added). Generally, a **transitory or**

**at will** employee does not have a property interest in continued employment beyond the terms of

his appointment. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 (1st Cir. 1997)

(emphasis added); King v. Town of Hanover, 116 F.3d at 969 ("An at-will employee has no

reasonable expectation of continued employment. Whether an employment contract allows

dismissal only for cause is a matter of state law."). Thus, whether a dismissal is allowed solely

for cause is a matter of state law. See King v. Town of Hanover, 116 F.3d at 969; Cummings v.

Page -10-

South Portland Hous. Auth., 985 F.2d at 2. Under Puerto Rico law and First Circuit precedent

interpreting the Commonwealth's law, "transitory employees generally do not have a property

interest in continued employment beyond their yearly terms of appointment." Nieves-Villanueva

v. Soto-Rivera, 133 F.3d at 94 (citing Caro v. Aponte-Roque, 878 F.2d 1, 4-5 (1st Cir.1989); see

also Melendez v. Municipio de Arroyo, 96 J.T.S. Case No. 68, at p. 1077 (P.R. Sup.Ct. May 15,

1996) (reaffirming that, as a matter of Puerto Rico law, transitory employees generally have no

"legitimate expectation" to a renewal of their contracts); Departamento de Recursos Naturales v.

Correa, 118 D.P.R. 689, 697 (1987) (same).); see also P.R. LAWS ANN. tit. 21, § 4554(c)

("Transitory employees shall not exceed one (1) year ..."). On the other hand, Puerto Rico law

also identifies employees who hold career positions and can only be removed for cause. See

Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 104 (1st Cir. 1997) (citing P.R. LAWS ANN.

tit. 3, §§ 1301, 1331-1338.). With the above framework in mind, the Court surveys the pertinent

facts of this case.

On the one hand, there is evidence that Plaintiffs' positions are transitory in nature with

one-year fixed terms. See (Docket No. 63, Exhibit 3); (Docket No. 64, Exhibits 17-24); see also

Footnote 3 above.

On the other hand, to rebut Plaintiffs assert that "Plaintiffs held contract positions at the

North Central Consortium-Arecibo (NCCA), they were affiliated to the NPP, they worked in the

local [Jayuya] office, and they had a legitimate expectancy of retaining their jobs and the[y] were

entitled to continued employment subjected only to the availability of federal funds (Exibits 17-

24)." (Docket No. 64, Statement of Contested Facts # 3). Further, in support of their contention,

Plaintiffs state in the memorandum of law that, "Not only were plaintiffs harassed and deprived

AO 72A
(Rev.8/82)

of their functions due to their political beliefs but plaintiff Yolanda Hernández was illegally

transferred while plaintiff Mildred Salgado-Rosario was harassed to such extreme that she was

forced to resign[4]. Hence, plaintiffs' right[s] to [] due process of law [were] violated (Exhibits

31-36)." (Docket No. 64, Memorandum of Law, p. 8) (citing Cleveland Bd. of Educ. v.

Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985); Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d

34, 37 (1st Cir. 1993); Pedro-Cos v. Contreras, 976 F.2d 83 (1st Cir. 1992)).

   First, the Plaintiffs concede and their exhibits 17-24 establish that they were transitory

contract employees and as such do not have a property interest in their continued employment

under Puerto Rico law. (Docket No. 64, Exhibits 17-24); Nieves-Villanueva v. Soto-Rivera, 133

F.3d at 94; Caro v. Aponte-Roque, 878 F.2d at 4-5; Melendez v. Municipio de Arroyo, 96 J.T.S.

Case No. 68, at p. 1077; Departamento de Recursos Naturales v. Correa, 118 D.P.R. at 697; see

also P.R. LAWS ANN. tit. 21, § 4554(c). Second, the cases cited by Plaintiffs are clearly

inapposite, because therein the plaintiff, pursuant to state law, either could only be discharged for

good cause or were career employees. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at

538-539, 105 S.Ct. at 1491 (State law which allowed dismissal only for good cause created

property interest, an issue not in dispute.); Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d at 36,

41 (Even though First Circuit acknowledged plaintiff was a career employee, the court dismissed

the due process claim due to plaintiff's failure to, *inter alia*, clearly identify "the property right or

rights of which he was deprived."); Pedro-Cos v. Contreras, 976 F.2d 84-85 (First Circuit ruled

that defendants' motion for summary judgment should have been granted on qualified immunity

---

[6] See Footnote 2 above.

for damages liability and because of the failure to raise the property interest issue.).

Therefore, the Plaintiffs do not have a property interest to sustain their due process claims and hence, the same are **DISMISSED** and Germán R. Román-Vélez' motion for summary judgment (Docket No. 63) is **GRANTED IN PART**.  See Board of Regents of State Colleges v. Roth, 408 U.S. at 577, 92 S.Ct. 2701; Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 94; King v. Town of Hanover, 116 F.3d at 969; Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173-1176 (1st Cir. 1988).

### B. First Amendment Claim.

The Court pauses momentarily to note that "the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim." Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 98.

In order for a claim to be cognizable under § 1983, a plaintiff must plead and prove three elements: (1) that the defendant acted under color of state law, Gomez v. Toledo, 446 U.S. 635 (1980); (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities, Daniels v. Williams, 474 U.S. 327, 330 (1986); and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989); Rizzo v. Goode, 423 U.S. 362, 370 (1976).  Román argues that under the facts of this case there is no causal connection between his actions and a deprivation of Plaintiffs' constitutional rights; an intervening cause precludes his liability; or his actions were not reckless and callous in clear disregard to Plaintiffs' rights, therefore, no deprivation of a

AO 72A
(Rev.8/82)

constitutional dimension has occurred.  Notwithstanding, Román actions (or inactions) are at the epicenter of this tempest.

Plaintiffs claim that they were discriminated against because of their political beliefs violating their First Amendment rights.  See Rutan v. Republican Party of Ill., 497 U.S. 62, 110 S.Ct. 2729 (1990); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673 (1976).  The First Amendment protects government employees in nonpolicymaking or transitory positions "against political affiliation discrimination applied not only to discharges, but also to significant personnel decisions such as whether to hire or promote a public employee."  Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 98 (citing Rutan v. Republican Party of Ill., 497 U.S. at 79, 110 S.Ct. at 2739-2740); see Larou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996).  Accordingly, a local government's decision whether to renew the contract of a transitory employee clearly falls under this ambit.  See id. (citing Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125 (1st Cir. 1987)).  Non-policymaking government employees who allege political discrimination have a threshold burden to produce evidence sufficient to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment action taken against them.  See Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 (1st Cir. 1998);  Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998).  To meet this burden, the plaintiff need not produce direct evidence of a politically-based discriminatory animus.  See Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997).  A discriminatory animus may be established with circumstantial evidence alone.  See id.; Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993).  A highly charged political atmosphere whereby one political party takes over power from another, combined with the fact

AO 72A
(Rev.8/82)

that the plaintiffs and defendants are of opposing parties may be probative of a discriminatory animus. See Acevedo-Diaz, 1 F.3d at 69. The plaintiff must, however, show that there is a causal connection linking defendant's conduct to the plaintiff's political beliefs. See Larou, 98 F.3d at 662; Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992).

Once the plaintiff meets his burden, the government employer must articulate a nondiscriminatory basis for the adverse employment action and must prove by a preponderance of the evidence that the employment action would have been taken without regard to the plaintiff's politics. See Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977); Rodriguez-Rios, 138 F.3d at 24; Acevedo Garcia v. Vera Monroig, 30 F.Supp.2d 141, 153 (D. P.R. 1998). "The burden of persuasion is on the [defendants] to establish a Mount Healthy defense. 'Summary judgment would be warranted ... only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a "but for" cause for the demotion.'" Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d at 103 (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

The First Circuit has held that a government employer's challenged conduct will be actionable when the conduct results in "a work situation 'unreasonably inferior' to the norm for the position." See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989). Subsequent to Agosto-de-Feliciano, the Supreme Court held that certain deprivations less harsh than dismissal–promotions, transfers, and recalls after layoffs–which are based on political affiliations infringe First Amendment rights. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990). It is unclear how much viability Agosto-de-Feliciano retains after the Rutan decision. See Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 12-

Page -15-

13 (1st Cir. 2000); Acosta-Orozco, 132 F.3d at 101 n.5 (Recognizing that it is an open question as to how much of the "unreasonably inferior" rule survives Rutan.); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705-06 (1st Cir. 1993); Cabrero v. Ruiz, 826 F.Supp. 591, 598 n.20 (D. P.R. 1993). However, what is clear is that a government employer may not reassign tasks on the basis of party affiliation. See Acosta-Orozco, 132 F.3d at 103 n.7. Additionally, depriving a plaintiff of his responsibilities and leaving him without real duties constitute unreasonably inferior working conditions. See Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 39-40 (1st Cir. 1993).

In the present case, Plaintiffs have adduced evidence that they are active in the NPP and that once González, a member of the rival PDP, was elected they were relieved of most of their duties, which were in turn assigned to PDP supporters. Hernández also complains of her unrequested and unwanted transfer to the central offices. The evidence as to Plaintiffs' losing their duties at work and Hernández' transfer is clearly sufficient to create a genuine issue of fact as to whether they have suffered an adverse employment action. See Rutan, 497 U.S. at 74, 110 S.Ct. at 2736 (First Amendment concerns are implicated when an employee who does not compromise her political beliefs is subject to "the hours and maintenance expenses that are consumed by long daily commutes."); Rodriguez-Pinto, 982 F.2d at 39-40 (depriving an employee of his duties and leaving him with nothing to do can constitute unreasonably inferior working conditions.).

In addition to showing that they have suffered an adverse employment action, Plaintiffs must also show a causal connection between this action and their political affiliation. See Larou, 98 F.3d at 662. A highly charged political atmosphere whereby one political party takes over

power from another, combined with the fact that the plaintiff and defendant are of opposing parties may be probative of a discriminatory animus. See Acevedo-Diaz, 1 F.3d at 69. Such a change in power took place in Jayuya and was followed by the adverse actions of which Plaintiffs complain. Moreover, there is evidence on the record that González did not want Plaintiffs working in the Jayuya office and that he wanted to fire them. There is also evidence on file that González and the other newly-elected mayors wanted to bring in their own people into the local NCCA offices. In fact that is precisely what occurred at the local Jayuya office, and that new employees (allegedly affiliated with the rival PDP) were given duties previously assigned to Plaintiffs.

Román is the executive director of the NCCA. In his motion for summary judgment, he argues that there is no causal connection between his conduct and the Plaintiffs' alleged constitutional injuries. There is evidence that Román knew that González wanted to get rid of Plaintiffs and install people of his own choice at the local Jayuya office. There is also evidence that Plaintiffs visited Román to complain about their treatment, but that he told them that they should start looking for jobs because González did not want them in the Jayuya office. According to the NCCA's regulations, Román is responsible for all personnel decisions at the agency. He was the official ultimately in charge of personnel matters, and therefore would have to be involved in any decisions to hire or transfer. After affording Plaintiffs every reasonable inference, as the Court is obligated in summary judgment, see LeBlanc v. Great Am. Ins. Co., 6 F.3d at 841, the evidence on record could show that not only did Román know about González' plans to transfer Hernández, he also knew about Plaintiffs' complaints but failed to implement any corrective measures to avert the unlawful results. Thus, the Court holds that a genuine issue

Page -17-

of fact exists as to his involvement in the adverse employment actions of which Plaintiffs complain. Accordingly, Román's motion for summary judgment (Docket No. 63), is **DENIED IN PART**.

### C. Qualified Immunity Defense.

Qualified immunity shields government officers performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. See Harlow v. Fitzgerald 457 U.S. 800, 818 (1982); Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier,117 S. Ct. 1219, 1227 (1997)(citations omitted); Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). "The Supreme Court has emphasized that a section 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law." Camilo-Robles v. Hoyos, 151 F.3d at 6 (citing County of Sacramento v. Lewis, __ U.S. __, __ n.5, 118 S.Ct. 1708, 1714 n.5 (1998)). "General statements of the law are not inherently incapable of giving fair and clear warning, ... a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Lanier, 117 S. Ct. at 1227 (citation, brackets, and internal quotation marks omitted). "Qualified immunity protects both federal and state officials from liability for damages in a civil rights

action if 'a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting] officer [] possessed.'" Aponte Matos v. Toledo Davila, 135 F.3d at 186 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987)). The qualified immunity defense paints with a broad brush, protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citations omitted). The two part inquiry is well settled and if the first part is not met then, the analysis halts because "there is qualified immunity." Aponte Matos v. Toledo Davila, 135 F.3d at 187.

> "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would "have understood that the challenged conduct violated that established right."

Id., 135 F.3d at 186 (citations omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982). A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness. See Camilo-Robles v. Hoyos, 151 F.3d 1, 5-6 (1ˢᵗ Cir. 1998).

Under the circumstances Román believes his actions were objectively reasonable and therefore, the defense of qualified immunity obviates his liability to Plaintiffs. Román does not contest whether the Plaintiffs' rights were clearly established. See Rutan, 497 U.S. at 75-79, 110 S.Ct. at 2737-39; Acevedo-Diaz, 1 F.3d at 66; Nereida-Gonzalez, 990 F.2d at 705-06; Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 335 (1ˢᵗ Cir. 1993); Correa-Martinez, 903 F.2d at 56-57; cf Acevedo-Garcia v. Vera-Monroig, 204 F.3d at 10-13.

The qualified immunity standard is an objective one. See Crawford-El v. Britton, 523 U.S. 574, 590, 118 S.Ct. 1584, 1593 (1998). "Evidence concerning the defendant's subjective intent is simply **irrelevant** to that defense [of qualified immunity]." Id. 523 U.S. at 588, 118 S.Ct. at 1592 (emphasis added). However, the granting of summary judgment based on objectively reasonableness grounds of the qualified immunity defense is not appropriate where there is a factual issue as to an essential element of the plaintiff's claim that bears on the determination of the objective reasonableness of the defendant's actions. See Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997); see also Camilo-Robles v. Hoyos, 151 F.3d at 7-8 (In unusual case when inquiries of "qualified immunity" and "merits" overlap Court may "engage the merits."). Hence, the Court turns to the facts to objectively determine the reasonableness of Román's conduct. The Court has thoroughly examined the evidence proffered by Plaintiffs against Román. In the present case, there are factual issues as to the nature of the conduct of Román, as well as to his motivations behind his conduct. See Acevedo-Garcia v. Vera-Monroig, 204 F.3d at 11 ("For a subset of constitutional torts, motivation or intent is an element of the cause of action."). Undoubtably, Román knew that discriminating against Plaintiffs in their employment relationship for political differences was clearly in violation of federal law. Moreover, after Plaintiffs are afforded every reasonable inference that can be adduced from the record, there are factual issues as to the essential elements of Plaintiffs' claims, including the nature of the involvement of Román; his motivations or intents for his conduct (e.g., whether Román's actions rise to the level of deliberate, reckless or callous behavior sufficing to § 1983 liability.); and the severity of the alleged adverse actions suffered by Plaintiffs. See id. at 11-12 (Affirming District Court's use of "defendant's motivation in terminating plaintiffs is a factual matter" within

qualified immunity analysis.). The Court is mindful that defendant's subjective intent is irrelevant to the qualified immunity defense. See Crawford-El v. Britton, 523 U.S. at 588, 118 S.Ct. at 1592. Nevertheless, the Court holds that after indulging Plaintiffs with every reasonable inference discernable from the facts on record, when viewed objectively permit a finding that Román, as a reasonable person, knew or should have known, that his conduct violated clearly established statutory or constitutional rights of the Plaintiffs. See Harlow v. Fitzgerald, 457 U.S. at 817-818. The Court elaborates briefly.

To bolster his position that his conduct was objectively reasonable, Román states that he had obtained legal advice regarding employment actions to be instituted by NCCA, including the ones in dispute. Next, Román advised the NCCA mayors that none of the employees of the NCCA could be discriminated against solely because of their political affiliation and/or beliefs. (Docket No. 63, Exhibit 1).

However, Román's advice to NCCA does not constitute a panacea for the imminent political discrimination about to be manifested to Plaintiffs' detriment. Nor is it a talisman warding off all liability regardless of Román's other actions/omissions.

Other evidence on the record, also during that same time-frame, circa June 1997, demonstrates that Plaintiffs visited Román to complain about their treatment. At the meeting Román told Plaintiffs that they "better start looking for another job" and that hard times awaited them at the NCCA because González did not want them working at the local Jayuya. Román was aware of González' intentions to discriminate against Plaintiffs for their professed political affiliations. Román is the executive director of the NCCA and as such, is responsible for all personnel decisions at the agency. He was the official ultimately in charge of personnel matters,

and therefore would have to be involved in any decisions to hire or transfer. Reiterating, after affording Plaintiffs every reasonable inference, the evidence on record could show that not only did Román know about González' plans to transfer Hernández, he also knew about Plaintiffs' complaints but failed to implement any corrective measures to avert the unlawful results. On these facts, the Court held, in Section III.B. infra, that a genuine issue of fact exists as to Román's involvement in the adverse employment actions of which Plaintiffs complain.

Under the circumstances outlined above, the Court holds that Román's actions (i.e., Román's advice to the NCCA), at this summary judgment juncture where Plaintiffs as nonmovants are given every reasonable inference that can be drawn, were a thinly veiled facade. Notwithstanding that qualified immunity is a question of law, Román's Dr. Jekyll and Mr. Hyde conduct presents a question of credibility, which requires resolution by a trier of fact. The Court holds that through the lens of Román's conduct, there exists at minimum a question of fact whether a reasonable person in Román's position, would have believed that he violated Plaintiffs' federal rights by folding his arms, excepting the advice/letter ("better start looking for another job"), and sitting idly by and allowing or condoning González' trampling of Plaintiffs' federally protected rights. See Aponte Matos v. Toledo Davila, 135 F.3d at 186 ("The second [inquiry], ... is whether a reasonable officer in the same situation would have understood that the challenged conduct violated that established right."); see also Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982). Succinctly, there are genuine issues of material fact concerning the actions of Román affecting adversely his claim for qualified immunity. See Acevedo-Garcia v. Vera-Monroig, 204 F.3d at 10-13. Thus, the request for qualified immunity by Germán R. Román-Vélez is **DENIED**.

AO 72A
(Rev.8/82)

WHEREFORE, the Court **GRANTS IN PART** Germán R. Román-Vélez' summary judgment filed in his personal capacity (Docket No. 63), and thus, Plaintiffs' Due Process claims are **DISMISSED**.  The remainder of the motion including Germán R. Román-Vélez' request for qualified immunity is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of April, 2000.

P \FINALORD ERS\97-2618B SUM

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

AO 72A
(Rev.8/82)